# CIRCUIT COURT OF THE CITY OF RICHMOND

Oasis Counseling Services

v.

Commonwealth of Virginia,
ex rel. Department of
Medical Assistance Services

June 29, 2012

Case No. CL12-244

By Judge Melvin R. Hughes, Jr.

This case is an administrative appeal noted by Oasis Counseling Services ("OCS") from a ruling by the Department of Medical Assistance Services ("DMAS") concerning an overpayment of $100,562.37. OCS is an enrolled provider under the Virginia Medicaid program, which pursuant to a contract with DMAS, provides intensive in-home services ("IIH"). IIH services are mental, emotional, or behavioral assessments of a child or of an adolescent, conducted in the recipient's residence, by a licensed mental health provider ("LMHP") or a qualified mental health provider ("QMHP"). DMAS determined the overpayment after an audit of services rendered by OCS during the period of January 26, 2009, to April 17, 2010.

After an appeal to the hearing officer, the overpayment was upheld. This appeal followed. OCS seeks reversal on five grounds. As a threshold matter, DMAS objects to the scope of the OCS appeal based on 12 VAC 30-20-560(A). The regulation requires that the notice of appeal identify the issues appealed. DMAS contends that OCS's notice of appeal failed to identify the five issues. Rather, DMAS contends that OCS's notice stating that "this notice serves as an official appeal regarding the results of the informal fact finding conference" and the remaining part of the notice, which recites: "the issue of concern is the documentation using the Treatment Planner"

for certain named recipients, are the only issues properly noticed. The court agrees.

Under VAC 30-20-560(A), "the notice of formal appeal should identify the issues being appealed." Here, as noted, the notice addresses "the results of the informal fact finding conference" and the issue of treatment planners. Since the notice made only a general statement and identified only one of the five issues, use of treatment planners, DMAS is correct in its assessment that the notice does not comply with the regulation. Accordingly, only the issue identified can be properly considered in this appeal. Thus, consideration of this appeal will be confined to the use of treatment planners and whether the overpayment determination was proper.

## Standard of Review

When the issue involves an agency decision based on the "proper application of its expert discretion, the reviewing court will not substitute its own independent judgment for that of the agency but rather will reverse the agency decision only if that decision was arbitrary and capricious." *Fralin v. Kozlowski*, 18 Va. App. 697, 701, 447 S.E.2d 238, 240 (1994) (citing *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 369 S.E.2d 1 (1988)). With respect to factual issues, the sole determination is whether substantial evidence exists in the agency record to support the agency's decision. *Johnston-Willis, Ltd.*, 6 Va. App. at 242, 369 S.E. 2d at 7.

## Treatment Planners

Treatment Planners are diagnostic tools that contain pre-written treatment goals, objectives, and interventions used for Individualized Service Plans (ISP).

Here, DMAS did not approve OCS's use of Treatment Planners because OCS did not give individualized ISPs for recipients J.H., K.I.H., K.E.H., C.H., and K.S., as required under 12 VAC 30-50-226(A) and chapter VI of the Community Mental Health Rehabilitative Services ("Manual"). The regulation defines ISP as:

> a comprehensive and regularly updated statement *specific to the individual being treated* containing, but not necessarily limited to, his treatment or training needs, his goals and measurable objectives to meet the identified needs, services to be provided with the recommended frequency to accomplish the measurable goals and objectives, and estimated timetable for achieving the goals and objectives.

12 VAC 30-50-226(A) (emphasis supplied).

Furthermore, the Manual provides that:

[t]he ISP should indicate, in specific terms, the activities of both the client and the staff. For each goal/objective the ISP should state the following: why such goal/objective is needed, the desired outcome for a particular goal/objective, strategies for service intervention, staff person responsible for service intervention, a target date for accomplishment of the goal/objective, and the planned frequency of staff activity.

Manual, chap. VI, p. 8, 07/01/2009 version.

When "the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." *Johnston-Willis, Ltd.*, 6 Va. App. at 244, 369 S.E.2d at 8. "[DMAS's] interpretations of the statutes and regulations governing Medicaid and Medicare principles of reimbursement are entitled to deference by a reviewing court." *Fralin*, 18 Va. App. at 701, 447 S.E.2d at 241. Thus, DMAS's interpretation of 12 VAC 30-50-226 and the Manual should be given weight.

DMAS does not argue that use of the Treatment Planners is prohibited by the regulation or the Manual, but rather that, in developing the ISPs, OCS copied language directly from the Treatment Planners, thereby making the ISPs nonspecific to the individual recipients and thus failing to satisfy the level of specificity required by 12 VAC 30-50-226 and the Manual. On the other hand, OCS argues that its use of the Treatment Planners, whether verbatim or not, satisfies the specificity requirement because choosing specific answers from the Planners does give individualized ISPs.

During the formal hearing, an expert witness testified that the Treatment Planners describe the plans more generally applicable to any recipient with a problem in that area; therefore, verbatim use of the Treatment Planners is not specific to the recipients. (Hr'g Tr. 307:20-25; 308:1-11.) She further testified that some use of the language in the Treatment Planner is acceptable but that, based on her review of the ISPs for the above recipients, the planners were too general in nature and did not include information that was specific to the patients. She also stated that, during her trainings, she always informs providers that if Treatment Planner language is used, specific behavioral problems of the client and what the client is asked to do should also be provided. (Hr'g Tr. 308:18-25, 309:1-4.)

Given the deference owed to the agency's expertise and under the standard of review, the agency's determination of overpayment on account of these deficiencies was not unreasonable, not arbitrary or capricious, and has a reasoned basis compared to the requirements and should be upheld.

## The Overpayment

DMAS's overpayment determination of $100,562.37 is proper. The only issue OCS identified in its notice of appeal is with respect to whether the ISPs for recipients J.H., K.I.H., K.E.H., C.H., and K.S. were recipient specific. Since, OCS failed to meet the specificity requirement under the regulation, DMAS's overpayment determination of $100,562.37 is proper.

For the foregoing reasons, it cannot be said that DMAS's determination of overpayment is without any basis, the only issue properly noticed for this appeal. Accordingly, DMAS's overpayment determination of $100,562.37 should be upheld.